UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HYDRO-PHOTON, INC.,<br>           Plaintiff,<br>v.<br>MERIDIAN DESIGN, INC.,<br>           Defendant. | C.A. No. 05-11240 GAO |

**MEMORANDUM IN SUPPORT OF DEFENDANT MERIDIAN DESIGN, INC.'S
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Defendant Meridian Design, Inc. ("Meridian") submits this Memorandum in support of its Motion for Summary Judgment of Non-Infringement pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, Plaintiff Hydro-Photon, Inc.'s ("Hydro-Photon's") claim that Meridian infringes U.S. Patent No. 6,110,424 ("the '424 patent") should be rejected as a matter of law.

**I.  INTRODUCTION**

In its Complaint, Hydro-Photon accuses Meridian of infringing the '424 patent by making, using, offering for sale and/or selling its AquaStar™ product. Fact 1. The '424 patent describes and claims a system for purifying water using ultraviolet light emitted from a hand-held device. Fact 2; Ex. 1 (the '424 patent). At least one limitation of the asserted claims of the '424 patent is not present in Meridian's accused AquaStar™ product, which would have been apparent to Hydro-Photon had it conducted an adequate investigation before filing suit.

In particular, asserted claims 7-10 require a "control means for turning the light source on and off." Fact 10. Because Meridian's product does not include features corresponding to this claim limitation, either literally or under the doctrine of equivalents, it is not covered by the claims of the '424 patent. Thus, summary judgment of non-infringement is proper.

1

**II.    TECHNICAL BACKGROUND**

    **A.    The Ultraviolet Purification System of the '424 Patent**

The '424 patent discloses a portable ultraviolet water purification system. In particular, ultraviolet light in the "germicidal range" emitted from an ultraviolet lamp is intended "to disinfect water, that is, to rid water of bacteria, viruses, algae and so forth." Fact 3; Ex. 1, col. 1, lines 13-16; *id.*, col. 2, lines 28-30.

Figure 2, reproduced below, illustrates the device described and claimed in the '424 patent:



FIG. 2

As described in the specification of the patent, Hydro-Photon's claimed device includes an "ultraviolet [UV] lamp [12] that is enclosed in a quartz cover [16] and is powered by a battery and associated ballast circuitry. The battery and ballast circuitry are connected to the lamp by switches that are under the *control* of a liquid-level sensor. The sensor connects the battery, the ballast circuitry and the lamp once the sensor determines that the ultraviolet lamp is fully immersed in the water." Fact 4; Ex. 1, Abstract (emphasis added).

The device claimed in the '424 patent includes an ultraviolet transmissive cover. As the specification describes, "[a] quartz sleeve surrounds the UV light source, to protect it and its electrical connections from the water while allowing the UV radiation to pass to the water." Fact 5; Ex. 1, col. 1, lines 19-22; *id*., col. 2, lines 33-34.

The '424 patent is also concerned with potential harmful ultraviolet radiation exposure to the user. Fact 6. It proposes protecting the user from ultraviolet radiation by the use of the liquid-level sensor, as follows (*id*., col. 2, lines 5-11):

> The system, which is battery-operated, further includes a liquid-level sensor at the base of the UV lamp. The sensor prevents the lamp from turning on until the lamp is fully immersed in the water. The container and the water act to shield the UV radiation, such that little is emitted from the container. This prevents potentially harmful UV radiation from reaching the user and, in particular, the user's eyes.

*See id*., col. 2, lines 44-53; *see also id*., col. 2 lines 56-59 ("When the sensor determines that it is in water, which necessarily means that the lamp is immersed in the water, the sensor closes the switches and *allows* the lamp to be turned on.") (emphasis added).

### B.    Meridian's Accused AquaStar™ Product

Meridian manufactures and sells an ultraviolet portable water purifier product called AquaStar™.[1] Fact 11. Sample AquaStar™ products are being provided to the Court with the present Motion.

The AquaStar™ product is pictured below:

---

[1] Meridian also manufactures and sells a product called AquaStar Plus!™, which includes certain additional features, such as an improved timing circuit, better weather sealing, added shock protection, and a built-in camping lantern function. Fact 12. None of these additional features affect the non-infringement analysis presented herein. Hence, the AquaStar Plus!™ product does not infringe the '424 patent for at least the same reasons as the AquaStar™ product.

3



The AquaStar™ product includes a bottle with an opening and threaded screw-on cap that fits over the opening of the bottle.  The cap includes an ultraviolet bulb mounted to the cap and oriented to extend into the bottle when the cap is screwed onto the bottle.  The cap contains batteries for providing power to the ultraviolet bulb and a switch for the turning the bulb on and off.  Fact 13.

Meridian's accused product differs from the ultraviolet water purification system claimed in the '424 patent.  Most importantly, for purposes of the present Motion, the AquaStar™ product does not have a liquid-level sensor that controls whether the ultraviolet bulb will turn on. Fact 14.  This can be verified by pressing the switch on the cover to turn the bulb on while the bulb is *not* immersed in water.  Fact 16.  The AquaStar™ product is designed to operate even when the bulb is not immersed in water because the bottle, which is made of a polycarbonate material, blocks 100% of the ultraviolet light emitted by the ultraviolet bulb regardless of whether the ultraviolet bulb is immersed in water.  However, since the ultraviolet bulb of the AquaStar™ product will operate even when the bulb is not immersed in water, users are

cautioned not to press the on-off switch when the bulb is not inserted into the bottle filled with water. Fact 17.

## III.  PATENT INFRINGEMENT IS PARTICULARLY AMENABLE TO SUMMARY JUDGMENT

Summary judgment should be granted whenever "there is no genuine issue as to any material fact" and "[t]he moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Claims of patent infringement are particularly appropriate for resolution on summary judgment. The central issue in most patent infringement disputes is the meaning of the patent claims. *See ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 540 (Fed. Cir. 1998); *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332-33 (Fed. Cir. 1998). Claim construction is a pure question of law that may be decided freely by the Court on summary judgment. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Desper*, 157 F.3d at 1332-33. As long as the structure of the accused product is not in dispute—and it is not here—the question of infringement "collapses to one of claim construction and is thus amendable to summary judgment." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996).

Summary judgment is appropriate when one party has insufficient evidence on an issue on which that party bears the burden of proof. *See Celotex*, 477 U.S. at 322-25. The moving party need not produce evidence of its own, but may simply point out to the tribunal that the non-movant cannot satisfy its burden of proof. *Id.*

Here, Hydro-Photon bears the burden of proving infringement by a preponderance of the evidence. *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000). To satisfy this burden, Hydro-Photon must demonstrate that each limitation of the asserted patent claims, or an equivalent of each limitation, is present in the alleged infringing

5

device.  *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1161 (Fed. Cir. 1997); *Electro Scientific Indus., Inc. v. Dynamic Details, Inc.*, 307 F.3d 1343, 1350 (Fed. Cir. 2002).  Because Hydro-Photon bears the burden of proving infringement, Meridian may prevail on summary judgment by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to Hydro-Photon's case.  *See, e.g., Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

Once Meridian has made this initial showing, the burden shifts to Hydro-Photon to adduce specific facts establishing that there is a genuine issue for trial.  *See id.*  Summary judgment of non-infringement should be granted if, after drawing all reasonable inferences in favor of the patentee, no reasonable finder of fact could return a verdict of infringement.  *See Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1207 (Fed. Cir. 2001).

### IV.   MERIDIAN DOES NOT INFRINGE THE CLAIMS OF THE '424 PATENT

Analyzing the issue of patent infringement is a two-step process.  "First, the claims of the patent must be construed to determine their scope.  Second, a determination must be made as to whether the properly construed claims read on the accused device." *Interactive Gift Express v. Compuserve Inc.,* 256 F.3d 1323,1330 (Fed. Cir. 2001).  Hydro-Photon has asserted that Meridian is infringing claims 7-10 of the '424 patent, of which only claim 7 is in independent form.  Fact 9.  All of the asserted claims require a "control means for turning the light source on and off," which is a limitation in independent claim 7.  Fact 10.  As discussed below, when this limitation is properly construed, the AquaStar™ product does not include this feature.  As a result, Meridian does not infringe the asserted claims of the '424 patent,[2] and summary judgment of non-infringement should be granted in its favor.

---

[2] Meridian does not infringe dependent claims 8-10 of the '424 patent because each dependent claim necessarily includes every limitation of the independent claim from which it

6

### A.     The Law of Patent Claim Construction

Claim construction is purely a matter of law for the Court to decide. *Markman*, 517 U.S. at 387-89. Although the Court may ultimately rely on a variety of evidence to give meaning to the terms of the patent claims, it "should first look to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history. Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citation omitted); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc).

First, the Court should look to the words of the claims themselves to define the scope of the patented invention. *Vitronics*, 90 F.3d at 1582; *Gemstar-TV Guide Int'l, Inc. v. International Trade Comm'n*, 383 F.3d 1352, 1361 (Fed. Cir. 2004). Generally, the words in a claim are given their ordinary and customary meaning. *Vitronics*, 90 F.3d at 1582; *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362-63 (Fed. Cir. 1999).

Second, after considering the claim language, the Court should review the specification "to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics*, 90 F.3d at 1582. As the Federal Circuit recently emphasized, it is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of claims." *Phillips*, 415 F.3d at 1317.

Reference to the specification is particularly important when construing means-plus-function limitations under 35 U.S.C. § 112, ¶ 6. These limitations are construed by first identifying the function explicitly recited in the claim, and then identifying the corresponding structure disclosed in the specification that performs the recited function. *Asyst Techs., Inc. v.*

---

depends. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.").

*Empak, Inc.*, 268 F.3d 1364, 1369 (Fed. Cir. 2001); *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360-61 (Fed. Cir. 2000). Means-plus-function limitations are construed to encompass only those structures expressly disclosed in the specification as performing the recited function, as well as equivalent structures that perform the identical function. *Cross Medical Prods., Inc. v. Medtronic Safomar Danek, Inc.*, No. 05-1043, 2005 U.S. App. LEXIS 21200, at *22 (Fed. Cir. Sept. 30, 2005); *Asyst Techs.*, 268 F.3d at 1369; *Kemco Sales*, 208 F.3d at 1364. The "equivalents" covered under 35 U.S.C. § 112, ¶ 6 are known as "statutory equivalents" or "structural equivalents," as distinguished from equivalents covered under the judicially created doctrine of equivalents. *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1435-36 (Fed. Cir. 2000).

Third, the Court may also consider the patent's prosecution history, if in evidence, in construing a claim term. The prosecution history, however, may not "enlarge, diminish, or vary" the terms in the claim. *Markman*, 52 F.3d at 980.

Finally, the Court may consider "extrinsic evidence," such as dictionaries, treatises, inventor testimony, and expert testimony, only if the intrinsic evidence is insufficient to construe the claims. *Interactive Gift Express,* 256 F.3d at 1332. If the disputed claim terms can be fully construed from the intrinsic evidence alone, the Court's analysis should stop there. *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408, 1414 (Fed. Cir. 2000); *Vitronics*, 90 F.3d at 1582-84; *accord Phillips*, 415 F.3d at 1303.

### B. The Control Means Limitation Should Be Construed To Require the Combination of a Liquid-Level Sensor and an On-Off Switch

Independent claim 7 requires a "control means for turning the light source on and off." This claim element uses the means-plus-function language sanctioned by 35 U.S.C. § 112 ¶ 6 and recites no structure in the claim to perform the stated function, and thus is governed by the

case law interpreting the statute as set forth above. *Cross Medical*, 2005 U.S. App. LEXIS 21200, at *19. (reciting the word "means" gives rise to presumption that § 112 ¶ 6 applies).

The recited *function* is "**turning the light source on and off**." The specification of the '424 patent discloses only one embodiment of the invention, in which the *structure* for performing the recited function is described as follows (Ex. 1, col. 3, lines 8-12) (emphasis added):

> As discussed above, the lighting of the lamp 12 is *ultimately controlled* by the liquid-level sensor 20, such that the lamp lights only when both the on-off switch 29 is in the on position and the lamp is fully immersed in water.

Fact 7. *See also id.*, col. 3, lines 23-27 ("When the liquid-level sensor 20 determines that the lamp is fully immersed in the water, the sensor closes the switches (not shown) that separate the ballast circuitry 13 and the battery 14 (FIG. 1) from the lamp 12, and the lamp then turns on."). This language from the specification makes clear that the *structure* for performing the function of "turning the light source on and off" includes, at a minimum, **the combination of a liquid level sensor and an on-off switch**. Therefore, the "control means" limitation of claim 7 should be construed as "the combination of a liquid-level sensor and an on-off switch, as well as the structural equivalents of such a combination."

### 1.    The '424 Patent Discloses Only One Embodiment, in Which the Light Source Is Controlled by a Liquid-Level Sensor and an On-Off Switch

Hydro-Photon may argue that the "control means" limitation should not be construed to require a liquid-level sensor. For example, Hydro-Photon may assert that the structure for performing the recited function is simply the on-off switch, relying upon the statement from the specification that the "user controls the system with an on-off switch 28." Ex. 1, col. 3, line 7. This isolated statement from the specification, however, does not support such an argument.

9

Significantly, the quoted language from the specification refers to controlling the entire "*system*" (i.e., the ultraviolet light source, the liquid-level sensor, etc.), whereas the specific function recited in the "control means" limitation is limited to "turning the *light source* on and off." As discussed above, the specification describes only one embodiment of the invention, in which "the lighting of the *lamp 12 is ultimately controlled by the liquid-level sensor 20*, such that the lamp lights only when both the on-off switch 28 is in the on position and the lamp is fully immersed in water." *Id.*, col. 3, lines 9-12 (emphasis added). The specification includes no description or suggestion of any alternative embodiment of the invention in which the light source is controlled solely by an on-off switch, or by any structure other than the combination of a liquid-level sensor and an on-off switch. Fact 8.

In cases such as this, the Federal Circuit has held that "because there is only one embodiment described in the specification . . . there is no basis on which to extend the [means-plus-function] limitation to cover alternative, non-disclosed structure not shown to be structurally equivalent." *Cross Medical,* 2005 U.S. App. LEXIS 21200, at *22 (citing *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999)). Therefore, the claim construction proffered by Meridian is correct.

### 2. The Doctrine of Claim Differentiation Does Not Apply

Hydro-Photon may also argue that, under the doctrine of claim differentiation, the "control means" limitation should not be construed to require a liquid-level sensor due to the existence of claim 8, which depends from claim 7. Claim 8 recites, "The system of claim 7 further including a liquid-level sensor that prevents the light source from turning on until the light source is immersed in water." Ex. 1.

The doctrine of claim differentiation provides that, as a general rule, different claims in a patent are presumed to be of differing scope. *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533,

10

1538 (Fed. Cir. 1991) (citing *Autogiro Co. of Am. v. United States*, 384 F.2d 391 (Ct. Cl. 1967)). Thus, courts should not normally construe an independent claim to include a limitation specifically recited in a dependent claim if by doing so the two claims would have precisely the same scope. *Id.*

In cases involving means-plus-function limitations, however, the doctrine of claim differentiation does not apply. "It is settled law . . . that independent claims containing means-plus-function limitations do not have the same literal scope as dependent claims reciting specifically the structure that performs the stated function." *Medtronic, Inc. v. Advanced Cardiovascular Systems, Inc.*, 248 F.3d 1303, 1313 (Fed. Cir. 2001). The scope of an independent claim with a means-plus-function limitation is necessarily different than that of a dependent claim reciting the structure for performing the function because, as discussed above, the independent claim includes certain structural equivalents within its literal scope, whereas the dependent claim does not. *Laitram,* 939 F.2d at 1538. The Federal Circuit has repeatedly and consistently held that the doctrine of claim differentiation must yield to a claim construction mandated by 35 U.S.C. § 112 ¶ 6. *See, e.g.*, *Cross Medical*, 2005 U.S. App. LEXIS 21200, at *22-23 ("[A]lthough the doctrine of claim differentiation suggests that claim 5 should be broader than claim 1, any presumption that the claims differ with respect to this feature may be overcome by a contrary construction mandated by the application of § 112 ¶ 6."); *Medtronic*, 248 F.3d at 1313; *Laitram*, 939 F.2d at 1538.

In this case, the existence of claim 8, which recites a "liquid-level sensor," does not mean that the "control means" limitation of independent claim 7 cannot require a liquid-level sensor. Claim 7 is still necessarily broader than claim 8 because the control means in claim 7 includes both: (1) the combination of a liquid level sensor and an on-off switch; and (2) structural

equivalents of such a combination. Claim 8 limits claim 7 by eliminating the structural equivalents from the literal scope of claim 8. Therefore, the doctrine of claim differentiation does not apply, and the claim construction proffered by Meridian is correct.

### 3. The Prosecution History Confirms That the "Control Means" Limitation Requires a Liquid-Level Sensor

The prosecution history further supports requiring both a liquid-level sensor and an on-off switch for performing the function of turning the light source on and off. In an Office Action dated February 14, 1999, the patent examiner stated that several claims were allowable as distinguishable from one of the cited prior art references, U.S. Patent No. 4,276,256 issued to Karamanian, *because the claims included a liquid-level sensor*, as follows:

> The following is a statement of reasons for the indication of allowable subject matter: Although Karmanian teaches purifying water with a hand-held UV lamp, there is no suggestion to include a liquid-level sensor that prevents the lamp from turning on until the lamp is immersed in water.

Fact 18. This passage confirms that the liquid-level sensor is a critical aspect of Hydro-Photon's invention. Thus, if the structure corresponding to the "control means for turning the light source on and off" were construed to include the on-off switch but not the liquid-level sensor, the claims would be invalid in light of the prior art that was before the patent examiner during the prosecution of the application that issued as the '424 patent. The "control means" limitations should be construed to require both a liquid-level sensor and an on-off switch to preserve the validity of claims 7 and 24. *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 749 (Fed. Cir. 1987) ("a claim should be construed to uphold its validity if possible").

### C. The AquaStar™ Product Does Not Include a Liquid-Level Sensor or Any Equivalent Structure

The second step of the infringement analysis is to compare the properly construed claims to the accused device. A finding of infringement can be made only if each and every limitation

of the asserted claim is present in the accused device, either literally or under the doctrine of equivalents. *See Kahn v. General Motors Corp.*, 135 F.3d 1472, 1476-78 (Fed. Cir. 1998).

As explained above in Section II, Meridian's accused AquaStar™ product does not include (1) a liquid-level sensor or (2) the structural equivalent of the combination of a liquid-level sensor and an on-off switch. Accordingly, the AquaStar™ product does not include a "control means for turning the light source on and off," as required by claim 7 of the '424 patent. Thus, Meridian cannot literally infringe this claim because the AquaStar™ product fails to satisfy the "control means" limitation.

In addition, Meridian cannot infringe claim 7 under the doctrine of equivalents. First, the doctrine of equivalents is not available when the accused product is completely missing any element to which equivalence could even be applied. *Young Dental Mfg., Co. v. Q3 Special Prods.*, 112 F.3d 1137, 1143 (Fed. Cir. 1997); *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1467 (Fed. Cir. 1998). The doctrine of equivalents is an exception to literal infringement and must necessarily be applied narrowly. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("[T]he doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirements."). An equivalent is something that differs from the claimed limitation in only a trivial or "insubstantial" way. *Sage Prods., Inc. v. Devon Indus., Inc*., 126 F.3d 1420, 1423 (Fed. Cir. 1997). The concept of an "equivalent" may not be applied so broadly that it would eliminate a claim element in its entirety. *Warner-Jenkinson*, 520 U.S. at 29 (1997); *Sage Prods.*, 126 F.3d at 1425 (holding that when a patent contains "clear structural limitations, the public has a right to rely on those limits in conducting its business activities.").

Here, the doctrine of equivalents does not apply because Meridian has not substituted anything in the AquaStar™ product for the claimed control means. There is simply no structure in the AquaStar™ product corresponding to a liquid-level sensor, the combination of a liquid-level sensor and an on-off switch, or the structural equivalent of such a combination, which is required by claim 7. In fact, nothing acts as a liquid-level sensor in the AquaStar™ product because the ultraviolet bulb can be turned on even when it is not immersed in water. Fact 16. Accordingly, Meridian's accused product cannot infringe because it does not include an equivalent of the "control means."

Moreover, the doctrine of equivalents is not even available to Hydro-Photon due to prosecution history estoppel. "Prosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter that has been relinquished during the prosecution of its patent application." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 564 (Fed. Cir. 2000) (en banc), *vacated and remanded,* 535 U.S. 722 (2002). The Federal Circuit, sitting en banc, has explained that "a narrowing amendment made for any reason related to the statutory requirements for a patent will give rise to prosecution history estoppel with respect to the amended claim element." *Id*. at 566. Once an estoppel arises, it "acts as a complete bar to the application of the doctrine of equivalents." *Id*. at 574.

Here, prosecution history estoppel prevents Hydro-Photon from relying upon the doctrine of equivalents because during proceedings in the Patent & Trademark Office, Hydro-Photon narrowed the claims with the additional limitation of a "control means for turning the light source on and off." In particular, in an Office Action dated August 3, 1999, the patent examiner rejected application claim 11 (which issued as claim 7) under 35 U.S.C. § 103(a) as being unpatentable over the Karamanian reference. Fact 19. In response to this rejection, in an

14

Amendment dated November 18, 1999, the patentee acquiesced in the rejection and amended the claim with a narrowing amendment by *adding* the limitation of "control means for turning the light source on and off." The patentee also added a new claim (application claim 25, which issued as claim 24), including this same limitation. Fact 20. Hence, prosecution history estoppel bars application of the doctrine of equivalents with respect to the "control means" limitation of claim 7. *Festo*, 234 F.3d at 566 ("a narrowing amendment made for any reason related to the statutory requirements for a patent will give rise to prosecution history estoppel with respect to the amended claim element").

## IV.   CONCLUSION

For the reasons set forth above, Meridian's accused AquaStar™ product does not infringe any of the asserted claims of the '424 patent, either literally or under the doctrine of equivalents. The Court, therefore, should grant summary judgment of non-infringement, and dismiss Hydro-Photon's Complaint.

Dated:  November 14, 2005                             Respectfully submitted,

/s/Christopher Centurelli/s/
Jeffrey L. Snow (BBO #566388)
Christopher Centurelli (BBO #330860)
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
75 State Street
Boston, MA  02109-1808
(617) 261-3100

Peter Midgley
Matthew Whipple
HOLLAND & MIDGLEY, LLP
P.O. Box 1840
Boise, ID 83701
(208) 336-1234

Attorneys for Defendant
Meridian Design, Inc.