UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| HYDRO-PHOTON, INC., <br>             Plaintiff, <br> v. <br> MERIDIAN DESIGN, INC., <br>             Defendant. | C.A. No. 05-11240 GAO |

**MERIDIAN DESIGN, INC.'S OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE REPLY BRIEF**

Defendant Meridian Design, Inc. ("Meridian") hereby opposes the Motion for Leave to File Reply Brief (Dkt. No. 32) submitted by Plaintiff Hydro-Photon, Inc. ("Hydro-Photon").

Apparently dissatisfied with its previous attempt to rebut the principal contention of Meridian's summary judgment motion (i.e., that the "control means" limitation of claim 7 of the '424 patent requires a liquid level sensor), Hydro-Photon seeks a second chance to restate its contentions. However, since Hydro-Photon's reply does not add anything to its prior arguments, and it is clear from the specification of the '424 patent that the "control means" limitation unquestionably requires a liquid level sensor, Hydro-Photon's motion for leave to file a reply should be denied and summary judgment of non-infringement should be granted upon Meridian's motion (Dkt. No. 15).

Hydro-Photon's reply continues to avoid the clear language from the specification of the '424 patent that "***the lighting of the lamp 12 is <u>ultimately controlled</u> by the liquid level sensor 20, such that the lamp lights only when both the on-off switch 28 is in the on position and the lamp is fully immersed in water***." ('424 patent, col. 3, ll. 8-12; emphasis added.) This statement

is directly on point and dispositive of the issue that a liquid level sensor is a required component of the "control means."[1]  Hydro-Photon's argument that Meridian's reasoning would require the "control means" to include a timing circuit (Reply at 3) is flat wrong because there is no corresponding language in the specification stating that the lighting of the lamp is ultimately controlled by a timing circuit.  In fact, the '424 patent specification affirmatively states that the "water purifier 10 *may* also include a timing circuit 22 connected between the [liquid level] sensor [20] and the lamp and associated circuitry."  ('424 patent, col. 2, ll. 61-65; emphasis added.)  Thus, based on the intrinsic language in the specification of the '424 patent, it would be erroneous to construe the "control means" limitation of claim 7 to require this expressly optional timing circuit.

Moreover, nothing in the '424 patent states or otherwise suggests that the liquid level sensor is not a necessary feature of the "control means."  Indeed, the operation of the liquid level sensor is akin to any other switch that may or may not be present in the claimed circuitry.  Namely, it allows the light source to turn on in one state (when it detects water or is "on") and to turn off in another state (when it does not detect water or is "off").  In that regard, Hydro-Photon admits, "It is true, in the preferred embodiment disclosed in the '424 patent, the liquid level sensor 20 controls the switches to prevent them from turning the light source on if the light source is not immersed in water" (Reply at 2-3).  Nothing in Hydro-Photon's reply or opposition papers points to any device or embodiment disclosed in the '424 patent that operates without a liquid level sensor.

Hydro-Photon misstates Meridian's prior briefing when it discusses the gold grounding pin present in some of the accused devices.  (Reply at 2 n.2.)  Meridian has only stated that it

---

[1] Moreover, this statement is applicable to the claimed invention generally, and is not in any way limited to a "preferred embodiment."

may be difficult to turn on lamps having a gold ground pin in some circumstances (e.g., when their batteries are old and need to be replaced).  It is undisputed that all of Meridian's lamps, regardless of their configuration, will turn on without being immersed in water.  Hydro-Photon's failure to establish otherwise confirms that the accused devices lack a liquid level sensor as required by the asserted claims.

In its Reply, Hydro-Photon restates its arguments regarding claim differentiation and its improper reliance on the prosecution history of the '424 patent to attempt misconstrue the "control means" limitation.  (Reply at 4.)  However, Hydro-Photon's argument that the existence of claim 8 prevents the "control means" in claim 7 from including a liquid level sensor is illogical, because it relies on both the liquid level sensor structural limitation and an alleged corresponding new function ("to prevent the light source from turning on") to succeed.  This argument itself distinguishes the liquid level sensor (with its alleged new function) recited in claim 8 from the structural requirement of the combination of the on-off switch and the liquid level sensor, ***and their structural equivalents***, for the "control means" of claim 7.

Moreover, the authority cited by Hydro-Photo wholly fails to support its claim differentiation argument.  *See Wenger Mfg., Inc. v. Coating Mach. Sys., Inc*., 239, F.3d 1225 (Fed. Cir. 2001).  In *Wenger*, the Federal Circuit examined the specification of the patent-in-suit and concluded that the "recirculation" limitation, which had been erroneously incorporated during claim construction, was "an additional feature of the preferred embodiment." *Id.* at 1235.  Here, the '424 patent does not described the liquid level sensor as an addition feature of the preferred embodiment.  Rather, the liquid level sensor is what ***ultimately controls*** the device "such that the lamp lights only when both the on-off switch 28 is in the on position and the lamp is fully immersed in water." ('424 patent, col. 3, ll. 8-12.)

With respect to the prosecution history arguments, Hydro-Photon attempts to write out the liquid level sensor from the "control means" limitation by ignoring the statutorily mandated reference to the patent specification required by a means-plus-function claim construction analysis. (Reply at 5.) Clearly, a means-plus-function claim "shall be construed to cover the corresponding structure, material or acts *described in the specification* and equivalents thereof." 35 U.S.C. §112 ¶ 6 (emphasis added). Nothing Hydro-Photon may point to in the prosecution history alters the fact that the specification of the '424 patent unquestionably states that the lighting of the lamp is ultimately controlled by a liquid level sensor.

Regarding Hydro-Photon's further arguments in support of its cross-motion for infringement, Hydro-Photon continues to evade its duty to examine the infringement issue on the basis of the accused products rather than any patent application, literature, or statement of its own declarant. First, Hydro-Photon has absolutely no basis to assert that Meridian's patent application is a "technical write-up . . . regarding the details of its accused products." (Reply at 7.) There is no rule that Meridian's patent application has to describe its accused products, and in this case, it does not.[2] That is why the non-infringement determination is properly made by examining the accused products themselves, not any patents or applications which may describe one or more inventions used in the accused devices.

Finally, Hydro-Photon calls Meridian's arguments for non-infringement "absurd" (Reply at 8), but offers no credible rebuttal to them. Hydro-Photon fails to even address the plain meaning of the patent terms that require the accused devices be "hand-held," that their cases have an "outwardly extending ultraviolet light source" (i.e., extending beyond the span of the cap), and that the on-off switch is "contained in the case" (and not on the case) to overcome the

---

[2] Hydro-Photon bears the burden of establishing facts supporting its infringement contentions, which it has not done.

- 4 -

factual disputes associated with the absence of these claim elements from Meridian's accused products.

For example, Hydro-Photon simply cannot devise an argument to deal with the fact that the lamps in Meridian's accused products are contained within, as opposed to being "outwardly extending" from, the cases as required by the asserted claims.  ('424 patent, claims 7.)  *Indeed, Meridian has a significant basis of non-infringement (in addition to the fact that the accused devices do not include a liquid level sensor) because the lamp is not "outwardly extending" from the case, but rather, as is clear from the accused devices themselves, is completely encompassed on both ends by the components of the cap*.

Accordingly, Hydro-Photon's motion for leave to file its reply brief should be denied, and Meridian's motion for summary judgment of non-infringement (Dkt. No. 15) should be granted.

Dated:  January 6, 2006

Respectfully submitted,

/s/Christopher Centurelli
Jeffrey L. Snow (BBO #566388)
Christopher Centurelli (BBO #330860)
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
75 State Street
Boston, MA  02109-1808
(617) 261-3100

Peter Midgley
Matthew Whipple
HOLLAND & MIDGLEY, LLP
P.O. Box 1840
Boise, ID 83701
(208) 336-1234

Attorneys for Defendant
Meridian Design, Inc.